UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11407-GAO

GREGORY P. TURNER,
Plaintiff,

v.

HUBBARD SYSTEMS, INC.,
formerly known as and also doing business as
JIM HUBBARD AND ASSOCIATES, INC.,
Defendant.

OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
March 10, 2016

O'TOOLE, D.J.

The plaintiff asserts claims under the federal Computer Fraud and Abuse Act ("CFAA"), see 18 U.S.C. § 1030, as well as state law claims for conversion, intentional (or negligent) infliction of emotional distress, and unfair or deceptive business practices, see Massachusetts General Laws Chapter 93A. The parties have cross-moved for summary judgment. The magistrate judge to whom this matter was referred recommended granting summary judgment on the CFAA claim in favor of the defendant for the reason that the plaintiff cannot meet the CFAA's $5,000 threshold requirement for civil suits like this one. The magistrate judge also recommended that supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims be declined and that they be dismissed without prejudice. The plaintiff filed objections to the magistrate judge's Report and Recommendation ("R&R"), to which the defendant has responded.

In addition to the plaintiff's objections to the R&R, he has filed other motions to supplement the record, certify legal questions to the Massachusetts Supreme Judicial Court, and appeal one of the magistrate judge's docket-management orders.

Having carefully reviewed the voluminous pleadings, party submissions, and record, as well as the R&R, I ADOPT the magistrate judge's recommendations that judgment be entered for the defendant on the CFAA claim and that jurisdiction be declined as to the state law claims.

The plaintiff has raised numerous objections, but they can be grouped into two categories. First, the plaintiff argues that the magistrate judge erred by finding that his alleged statutory damages do not meet the $5,000 threshold necessary for a CFAA claim. Second, he argues that his damages under the state law claims exceed the $75,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a), making any consideration of supplemental jurisdiction unnecessary. Accordingly, he asserts that his state law claims should be addressed on the merits.

The important parts of the factual background can be summarized briefly. The defendant, Hubbard Systems, Inc., develops and markets a software suite known as Collection Partner. It also separately offers maintenance, support services, and updates to the software for an ongoing monthly fee. In the early 1990s, the plaintiff purchased a permanent license to use Collection Partner in his law practice. In 2011, the defendant claimed that the plaintiff was behind thousands of dollars in maintenance and other fees for Collection Partner. Collection Partner has a license key that unlocks the program and the various modules in its suite for use. That key can be set to expire, and in early 2011, the plaintiff received a key that, unknown to him, was to expire on June 1, 2011.[1]

Early in the morning of June 1, the plaintiff discovered that Collection Partner no longer operated. Collection Partner is integral to the plaintiff's business, and without it, he could not work.

---

[1] The defendant claims that setting the key to expire was part of an internal notification system alerting employees to the plaintiff's past-due bill. The defendant contends it never intended for the license to actually expire. Whether that statement is true or not is irrelevant for present purposes.

After email exchanges between the parties, a little before noon the same day the plaintiff received a key from the defendant that unlocked Collection Partner for two months. With the key, Collection Partner became operational again. After more discussions and payment by the plaintiff of $3,500 for past support services, the plaintiff eventually received a key that permanently unlocked his software suite. It has not gone down since.

Out of the events of June 1 and their aftermath, the plaintiff makes extravagant claims of a variety of injuries. He claims that he is entitled to the entire value of the Collection Partner suite, the entire value of a host of merges and macros developed for WordPerfect that rely on Collection Partner, the entire value of the plaintiff's IOLTA account, the plaintiff's expected annual income through retirement, the $3,500 the plaintiff paid the defendant, and damages for emotional distress.

**I.    Threshold Amount for the CFAA**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The process on summary judgment is simple enough. "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist . . . ." Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 54 (1st Cir. 2006) (quoting Ingram v. Brink's, Inc., 414 F.3d 222, 228–29 (1st Cir. 2005)). Viewed through that lens, summary judgment shall enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The CFAA prohibits unauthorized access to private computer systems and allows recovery in a civil action for "compensatory damages and injunctive relief or other equitable relief." See 18 U.S.C. § 1030(g). The parties do not dispute that under the relevant provision of the CFAA, the

plaintiff may recover "only if" there is "loss . . . aggregating at least $5,000 in value." See id. § 1030(c)(4)(A)(i)(I), (g).

> [T]he term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]

Id. § 1030(e)(11).

The statute specifically provides that damages for a violation of the type alleged by the plaintiff "are limited to economic damages." Id. § 1030(g). Thus, to survive a summary judgment motion, it was the plaintiff's burden to show that there was at least a dispute of material fact as to whether he suffered at least $5,000 in economic damages.

The plaintiff alleged the several categories of injuries noted above. In her R&R, the magistrate judge concluded that the only true losses the plaintiff suffered stemmed from his temporary loss of the use of Collection Partner on June 1. The economic damages flowing from the interruption included the plaintiff's having had to pay his two employees for the day though they were idled by the disruption and his unproductive rental cost for his office space for the day.

The plaintiff continues to press here an argument already rejected by the magistrate judge: that the fact that the plaintiff regained the use of Collection Partner on June 1 is only "mitigation" of his damages, an affirmative defense which the defendant failed to plea in its answer and is thus barred from presenting here. The plaintiff maintains that the correct measure of damages is those he *would have* experienced *if* Collection Partner was never reactivated, namely, the entire value of the plaintiff's business.

Such an argument is, of course, counterfactual and thus absurd. Damages in a private CFAA action are "compensatory." See 18 U.S.C. § 1030(g). *Compensatory* damages are not measured by some hypothetical alternate set of circumstances, but rather by harm that actually

occurred. The fact that the plaintiff was not harmed as much as he might have been had circumstances been different is not an effect of "mitigation"; it is reality.

Here, the plaintiff presented a small universe of potentially qualifying damages, all stemming from his Collection Partner software being out of commission on June 1. Even under a charitable viewing of the evidence, his expenses and lost income for that day total under $1,500.[2] Whether or not the plaintiff's eventual payment to the defendant of the $3,500 he was said to owe qualifies as a "loss" under the statute is therefore irrelevant. Viewed most generously to the plaintiff, the two categories together do not reach the $5,000 requirement of the CFAA.

In his objections, the plaintiff for the first time claims that he was damaged in an additional way—that he wasted several hours trying to obtain from the defendant a permanent license key for Collection Partner. The plaintiff demands compensation, at his hourly rate, for this time and has requested leave to supplement the factual record to include these losses. His new damages theory is foreclosed. "Parties must take before the magistrate, 'not only their "best shot" but all of their shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D. Me. 1984)). Discovery ended months ago; the record is closed. If the plaintiff was injured in any way by having to spend time discussing with the defendant their mutual relationship, he needed to make that argument first before the magistrate judge, not here. See Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co., 310 F.3d 32, 38 (1st Cir. 2002).

---

[2] The plaintiff never objected to the defendant's calculation of business expenses. (See Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. 10 n.5 (dkt. no. 243) (under seal).) Even adding in the plaintiff's unsupported claim of $150,000 average annual income, the total potential loss for that one day—in salary to himself and to his employees, in cost of rent, and in other costs—does not cross the $1,500 mark.

Unable to show damages reaching the $5,000 threshold, the plaintiff's civil claim under the CFAA fails. Summary judgment shall enter in favor of the defendant for that claim.

## II.    Diversity Jurisdiction

This Court does not have diversity jurisdiction over the state law claims. The parties are indisputably diverse: the plaintiff lives in Massachusetts, and the defendant is located in Texas and incorporated in Delaware. However, in addition to the fact of diverse citizenship, the amount in controversy for the state law claims must exceed $75,000 before federal courts have jurisdiction over them. See 28 U.S.C. § 1332(a). That requirement is not met here.

It is up to the plaintiff to show that the amount in controversy exceeds the jurisdictional threshold. Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012).

> A plaintiff's "general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court." However, once the opposing party has questioned the amount, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." This burden may be met by amending pleadings or submitting affidavits.

Id. at 41–42 (quoting Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)) (citations omitted). "[T]he 'sufficient particularity' standard requires something more than a plaintiff's conclusory statements." Id. at 45.

In addition to the less than $5,000 of damages particularly cognizable under the CFAA, the plaintiff has identified two other sources of damages: (1) time spent negotiating with the defendant after June 1[3] and (2) emotional distress. As to the first category, the plaintiff assesses those damages at approximately $6,250. (See Emergency Mot. for Leave to File Suppl. Mem. of Objs. to R&R, Ex. 1, Proposed Suppl. Aff. ¶ 34 (dkt. no. 308-1).) As to the second category, the plaintiff

---

[3] The amount in controversy issue was only clearly raised after the R&R, and even though these "negotiating damages" cannot be considered for the CFAA claim, see supra, I consider it here. In any event, it does not place the plaintiff's claims anywhere close to $75,000.

has provided no detail or even supposition. An affidavit from the plaintiff states that the defendant's conduct caused "emotional distress" whose "physical manifestation" took "the form of lost sleep and anxiety and headaches." (Gregory P. Turner Aff. ¶ 25 (dkt. no. 268).) He "took aspirin to combat depression and anxiety." (Id. at ¶ 61.) The record contains no evidence of visits to any medical or psychiatric professional. The plaintiff has not articulated with any specificity how this seemingly-mild emotional distress makes up the gap between his other damages and the $75,000 requirement. Cf. Abdel-Aleem, 665 F.3d at 42–43 (dismissing claims for, among other things, emotional damages for "lack of substantiation").

It is the plaintiff's burden to show how and in what way he may have been injured, and how those damages exceeded $75,000. He has not done so. This Court is without original jurisdiction over the plaintiff's state law claims. Considering the federal claim has already been disposed, I decline to exercise supplemental jurisdiction over them.

## III.   Supplemental Jurisdiction

The magistrate judge recommended against exercising supplemental jurisdiction. There is no substantial federal interest in retaining jurisdiction over and adjudicating purely state law issues. As the magistrate judge noted, the plaintiff will not be prejudiced by any statute of limitations, because under Massachusetts law, a plaintiff may refile his case in state court within one year of dismissal by a federal court for want of jurisdiction. See M.G.L. ch. 260, § 32; Liberace v. Conway, 574 N.E.2d 1010, 1012–13 (Mass. App. Ct. 1991). Moreover, since the R&R was entered, the plaintiff has filed a motion requesting the certification of seven questions of state law to the Massachusetts Supreme Judicial Court (dkt. no. 312), thus underscoring the appropriateness of leaving adjudication of those and other state law issues to the state courts.

## IV.   Conclusion

The plaintiff's Motion for Leave to File Amended Response to Defendant's Statement of Facts (dkt. no. 307) and Emergency Motion for Leave to File Supplemental Memorandum of Objections to R&R and Supplemental Affidavit in Support of Objections to R&R (dkt. no. 308) are DENIED. The plaintiff's appeal of the magistrate judge's decision not to strike certain documents from the record (dkt. nos. 302, 305) is DENIED. The plaintiff has not shown how the magistrate judge's denial order was clearly erroneous or contrary to law. See Fed. R. Civ. Pro. 72(a).

As explained above, I ADOPT the magistrate judge's R&R (dkt. no. 299). The defendant's Motion for Summary Judgment (dkt. no. 242) is GRANTED as it pertains to the CFAA claim, and the plaintiff's Motion for Partial Summary Judgment (dkt. no. 267) is DENIED. Judgment shall issue in favor of the defendant as to that claim. The state law claims are dismissed without prejudice for want of jurisdiction.

The plaintiff's Motion to Certify Questions of Law to the Supreme Judicial Court of Massachusetts (dkt. no. 312) is MOOT.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GREGORY P. TURNER,
Plaintiff,

v.                                         CIVIL ACTION NO. 12-11407-GAO

HUBBARD SYSTEMS, INC.,
Defendant.

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (##242, 267)

KELLEY, U.S.M.J.

I.  <u>INTRODUCTION</u>

On August 17, 2015, Defendant filed a motion for summary judgment with a statement of

facts. (##242, 243, 244, 245, 296, 297; un-redacted copies, ##249, 250, 251, 252.)[1] On October

1, 2015, Plaintiff filed an opposition to Defendant's motion for summary judgment (##264, 265),

and filed a cross-motion for summary judgment.[2] (##267, 268, 269, 270.) On October 22, 2015,

Defendant opposed the cross-motion (##272, 273, 274; un-redacted copies, ##284, 285, 286.) On

October 25, 2015, Plaintiff sought leave to file an opposition to (#244) Defendant's statement of

facts. (##275, 276.) The Court granted that motion, and Plaintiff filed his opposition to the facts

(#278) on October 27, 2015. Plaintiff also requested permission to file other documents. (#279.)

---

[1] Plaintiff responded with two emergency motions to strike parts of Defendant's documents. (##246, 247, 248.) Defendant opposed (#253), and Plaintiff replied, with leave of court. (#256.) On September 24, 2015, the undersigned held a hearing on Plaintiff's emergency motions. (#261.) Those motions have been resolved in separate orders. (##292, 298.)

[2] Plaintiff did not raise any affirmative arguments in his cross-motion, but merely referred to his opposition to Defendant's summary judgment motion.

1

Upon receiving leave, Plaintiff filed two statements of material facts (##287, 288), a second memorandum in support of his own summary judgment motion (#289), a reply to Defendant's opposition of his motion (#290), and a second affidavit in support of his motion. (#291.)

For the reasons set out below, the Court recommends granting Defendant's motion for summary judgment (#242) on Count I-A (CFAA) and dismissing the other three counts (conversion, negligent infliction of emotional distress, and violation of Mass. Gen. L. c. 93A), without prejudice to Plaintiff bringing an action for those three counts in Massachusetts state court, and denying in full Plaintiff's cross-motion for summary judgment (#267).

## II.    FACTS COGNIZABLE ON SUMMARY JUDGMENT

The following facts are undisputed, except where indicated. Defendant Hubbard is a corporation registered in Delaware, with a principal office in Birmingham, Alabama. (##244, 251 at ¶ 1; #269 at ¶ 2.) Plaintiff Turner is a Massachusetts resident with a law office in Lowell, Massachusetts. (##244, 251 at ¶ 2; #269 at ¶ 3b.[3]) Plaintiff is a member in good standing of the bars of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts. (#269 at ¶¶ 1, 3a; no response from Defendant.) He was self-employed solely as a collections attorney recovering delinquent accounts. (##288, 293 at ¶ 34.)

### A. Collection Partner Agreement

In the early 1990s, the parties entered a written agreement for Plaintiff's use of Defendant's Collection Partner software.[4] (##244, 251 at ¶ 3; #269 at ¶ 5.) In this agreement,

---

[3] The paragraphs in Plaintiff's statements of facts (##269, 278, 287) were not numbered sequentially. For convenience, the Court has indicated the first paragraph 3 as "3a" and the second paragraph 3 as "3b." Additional repeating numbers are also labeled this way.

[4] Defendant says the agreement was signed on December 16, 1992, and the agreement bears that date. (##244, 251 at 3; #251, exhibit 1, at 7.) Plaintiff states that it was 1993. (#269 at ¶ 5.)

Defendant granted Plaintiff a license for use of the Collection Partner software modules, along with future software upgrades, changes, enhancements, and updates. (##244, 251 at ¶ 3; no response from Plaintiff.) Defendant issued Plaintiff a new license key every 90 days. (##244, 251 at ¶ 5; no response from Plaintiff.) The license key is a file read by the software that contains codes allowing or denying access to software modules, so that the customer may use the software until the expiration date, if any, coded in the key.[5] (##274, 286 at ¶ 9; #274, exhibit B, at 3.) Per the terms of the agreement, Plaintiff made installment payments toward a license fee of $5,000.00. (##244, 251 at ¶ 4; no response from Plaintiff.) Plaintiff asserts that Hubbard was the sole drafter of the agreement;[6] Defendant disputes this, based on Plaintiff's deposition testimony.[7] (##269, 274, 286 at ¶ 6; #290 at 17.)

In or about 1996, Plaintiff made the final installment payment on the Collection Partner software and got a permanent software license. (##244, 251 at ¶ 6; #269 at ¶¶ 4, 7.) That license granted Plaintiff "the absolute right to a license key without an expiration date." (#269 at ¶ 8; no response from Defendant.) The 1992 agreement also obligated Plaintiff to pay a separate software maintenance fee of "the greater of $150 per month or 1-1/2% the price of the software" each month for the Collection Partner software and any additional optional modules. (##244, 251

---

[5] Plaintiff offers his own definition of a license key, but cites to no source material. (#269 at ¶ 9.) Because Plaintiff also asserts that the descriptions are essentially the same except for "semantical differences," the Court will accept as uncontested Defendant's definition, which comes from its answers to interrogatories. (#290 at 17-18.)

[6] Plaintiff cites the complaint (#1), which contains only allegations of facts, and Defendant's statement of facts (#244), which does not support his contention. To the extent he cites his own affidavit (#268), the statement in the affidavit is not based on personal knowledge.

[7] Plaintiff testified in deposition: "The provision about the permanent lease was a modification [to the contract]... [Hubbard] took a stab at it. I got the impression that this was a homemade contract, that it was not an artfully drafted contract by an attorney. And so we did the best we could to get that covered... We may have tweaked that language to try to get it to reflect what we agreed to..." (#274, exhibit 1, at 34-35.)

at ¶ 7; no response from Plaintiff.) At various times, Plaintiff paid a monthly fee for an optional module, Partner to Partner. (##244, 251 at ¶ 8; no response from Plaintiff.)

B. Plaintiff's Use of Collection Partner Software

Plaintiff used the Collection Partner software for 18 years, developing various WordPerfect macros and merges to use with it. (#269 at ¶ 20a, #290 at 21; no response from Defendant.) He created them personally, a task which took approximately 2000 hours of his time. (#269 at ¶ 19b; no response from Defendant.) Plaintiff used his WordPerfect macros and merges exclusively with Collection Partner to generate all his documents. (##288, 293 at ¶ 36.) Plaintiff states that he used the software as his sole means of administering his IOLTA accounts and court calendar, generating documents, keeping history entries and notations, and managing all litigation in his law practice. (#269 at ¶ 11a; #288 at ¶ 35; #290 at ¶ 18; #293 at ¶ 35.) Defendant disputes that the Collection Partner software, or Defendant, can access or administer any bank accounts or transfer funds without Plaintiff writing a hard copy check. (##274, 286 at ¶ 11).

C. Partner to Partner Module License Key

In April 2011, according to Defendant, Plaintiff was $2600 behind on "monthly software continuing maintenance charges" for Collection Partner.[8] (##244, 251 at ¶ 10.) On April 21, 2011, Plaintiff asked Defendant to send him a license key for the Partner to Partner software module. (#269 at ¶ 12a; no response from Defendant.) On April 25, 2011, Defendant updated

---

[8] Plaintiff disputes this (##278, 287 at ¶ 10), citing his motion to strike (#247), memorandum in support (#248), and his opposition to Hubbard's motion for summary judgment (#264), all of which contain only allegations of facts and legal argument. To the extent he cites his own affidavit (#268), the statement in the affidavit interprets the underlying contract and gives conclusions of law, not factual opposition. Plaintiff has not brought any charges relating to the contract, and therefore its interpretation is not at issue here.

Plaintiff's "firm license file" to turn on the Partner to Partner module, and sent Plaintiff the license key for that module. (##244, 251 at ¶ 7; #269 at ¶ 11b.) That license key contained an expiration date of May 31, 2011. (#269 at ¶ 12b; no response from Defendant.) Hubbard describes this as a "Review Anniversary Renewal ("RAR") code [in the] firm license file... to monitor [Plaintiff's] account balance."[9] (##244, 251 at ¶ 11.) Plaintiff never gave Defendant his permission to include an expiration in the license key. (#269 at ¶ 13; no response from Defendant.) Plaintiff states that Defendant intentionally included the expiration date for the software "in order to get a reaction out of" him and to collect money from him.[10] (#269 at ¶ 14.) Defendant disputes this, stating that Plaintiff has misconstrued the source material and taken it out of context, and that it never intended for the license key to expire.[11] (##244, 251 at ¶ 13; ##274, 286 at ¶ 14; #293 at ¶ 29.) Defendant knew that the license keys with expiration dates would shut off Collection Partner as of the expiration date, if they were not updated. (##288, 293

---

[9] Plaintiff disputes this (##278, 287 at ¶ 11), citing, inexplicably, the Defendant's motion for summary judgment (#242) and his own memorandum in opposition to Hubbard's motion for summary judgment (#265), both of which contain only allegations of facts and legal argument. To the extent he cites his own affidavits (##95, 268), the statements in the affidavits interpret the underlying contract and give conclusions of law, not factual opposition. Plaintiff also asserts that the deposition testimony of Benjamin Ivey, a Hubbard employee, is implausible, but does not cite any countervailing factual information.

[10] Plaintiff cites an email chain between Hubbard employees. (#95, exhibit 1.) He also cites to his own affidavits (##95, 268), but does not explain how this assertion could be based on personal knowledge.

[11] Defendant cites to Mr. Ivey's deposition, explaining the email chain. (#251, exhibit 5). Plaintiff disputes Defendant's assertion (##278, 287 at ¶ 13), again citing, inexplicably, the Defendant's motion for summary judgment (#242) and his own memorandum in opposition to Hubbard's motion for summary judgment (#265), both of which contain only allegations of facts and legal argument. To the extent he cites his own affidavits (##95, 268), the statements in the affidavit interpret the underlying contract and deposition testimony, give conclusions of law, and are not based on personal knowledge. Plaintiff also once again asserts that deponent Ivey is implausible, but does not cite any countervailing factual information.

at ¶ 29.)[12]

D. Software Inaccessibility

Defendant did not send, and Plaintiff did not receive, an updated license key before the expiration date.[13] (##244, 251, 278, 287 at ¶ 12.) Due to the expiration date in the Partner to Partner license key, Plaintiff's Collection Partner software became inaccessible on the morning of June 1, 2011.[14] (#269 at ¶ 15b.) On June 1, 2011, Plaintiff noticed that the Collection Partner software was shut down and inoperable, and emailed Defendant at 6:37 a.m. to notify it. (##244, 251 at ¶ 14; #269 at ¶ 15; ##274, 286 at ¶ 17.) At 11:32 a.m., Defendant emailed Plaintiff a new license key. (##244, 251 at ¶ 15; ##269, 274, 286 at ¶ 17.) Plaintiff states that between 6:37 a.m. and 11:32 a.m. on that date, he was completely unable to practice law.[15] (#269 at ¶ 16.) Defendant disputes this, noting that Plaintiff did not lose his law license or miss any court appearances or appointments.[16] (##274, 286 at ¶ 16.) Plaintiff claims his WordPerfect macros and merges were useless during the time his Collection Partner software was down. (#269 at ¶ 20b.) Defendant disputes this, citing to Turner's deposition. (##274, 286 at ¶ 20.) Plaintiff

---

[12] Defendant admits that the license key would shut off access on the expiration date, but denies that it ever intended for Plaintiff's license key to expire. (#293 at ¶ 29.)

[13] Plaintiff disputes that Defendant intended to send a license key (##278, 287 at ¶ 12), citing the Defendant's motion for summary judgment (#242), and his memorandum in opposition to Hubbard's motion for summary judgment (#265), both of which, as has been said above, contain only allegations of facts and legal argument. To the extent he cites his own affidavit (#268), the statement in the affidavit interprets the underlying contract and gives conclusions of law not based on personal knowledge, rather than factual opposition.

[14] Defendant does not directly dispute this fact, but notes that Plaintiff has been able to use the software continuously since receiving the new license key at 11:32 a.m. on June 1, 2011. (##274, 286 at ¶ 15.)

[15] Times are in the Central Time Zone as reflected on the Defendant's email. (*See* #290 at 20.)

[16] Plaintiff agrees that he did not lose his license or miss court dates or appointments, but insists that Defendant took away the "means" by which he practices law. (#290 at 20.)

alleges that Defendant did this for the purpose of "extorting" money from him, threatening not to give him a new license key if he did not pay. (#269 at ¶ 15a.) Defendant disputes that reasoning, noting that it did not receive any money from Plaintiff before it sent the new license key on June 1, 2011. (##274, 286 at ¶ 15.)

E. Plaintiff's Damages

Plaintiff's only losses were that he had to pay his employees and was unable to do any legal work during the time that Collection Partner was down. (##244, 251 at ¶ 18; no response from Plaintiff.) The license key Plaintiff received on June 1, 2011 included a new expiration date of July 31, 2011.[17] (##269, 274, 286 at ¶¶ 14, 18.) This new license key would have made Collection Partner inaccessible again on August 1, 2011. (#269 at ¶ 19a; no response from Defendant.) Once Plaintiff received the new license key on June 1, 2011, the software began working again and Plaintiff has been able to use it continuously since that time. (##244, 251 at ¶ 17; no response from Plaintiff.) Plaintiff did not miss any court appearances or appointments due to the Collection Partner software interruption, nor did he lose his law license. (##244, 251 at ¶¶ 19-20; no response from Plaintiff.) Plaintiff lost sleep and experienced anxiety and headaches because of Defendant's actions. (#269 at ¶ 22.)[18] Plaintiff made repeated demands on Defendant for "unrestricted permanent access" to the Collection Partner software. (#288 at ¶¶ 26.)[19]

---

[17] See n.9 and 10, supra.

[18] Defendant disputes this; however, it cites no countervailing factual information of which it has personal knowledge. (#274 at ¶ 22.)

[19] Defendant admits that Plaintiff requested access to the software and an explanation for why it was blocked, and that Plaintiff made "certain demands" upon it. (#293 at ¶ 26.) Defendant disputes that Plaintiff "repeatedly demanded 'unrestricted permanent access' to his Collection Partner program;" however, it cites to no source for its assertion. (Id.)

Plaintiff asserts that Defendant refused to provide a license key without an expiration date until January 2012. (#288 at ¶¶ 27-28.)[20]

## III.   FACTS NOT COGNIZABLE ON SUMMARY JUDGMENT[21]

Plaintiff makes several assertions that do not meet the definition of facts.[22] Plaintiff's statements of facts contain multiple conclusions of law, as follows: Defendant's actions were "intended to cause or negligently caused emotional distress in" Plaintiff, and did in fact cause him emotional distress[23] (#269 at ¶¶ 21a, 21b); a reasonable person would have experienced emotional distress[24] (#269 at ¶ 23); Defendant knowingly or willfully put an expiration date in the license keys, within the meaning of Mass. Gen. L. c. 93A, §11[25] (#269 at ¶ 24); Defendant's conduct, in sending a license key with an expiration date and refusing to send a license key promptly on Plaintiff's demand, was "knowing and/or willful" and constituted unfair acts

---

[20] Defendant disputes this, providing computer screenshots to support its assertion that it provided Plaintiff with license keys without expiration dates in 2009 and 2010. (#293 at ¶ 28, exh. 1.) Assuming this is true, it does not bear on the time period at issue in this case.

[21] Legal justification for excluding these facts can be found *infra* at pp. 12-14.

[22] "Fact" refers to "an actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Fact, Black's Law Dictionary* (8th ed. 2004).

[23] This remains a legal conclusion, despite Plaintiff's argument that it is a fact that could be inferred, and that Defendant did not provide countervailing facts. (#290 at 21.)

[24] This remains a legal conclusion, despite Plaintiff's insistence that he "is competent to testify to the fact that a reasonable person would suffer emotional distress... having lived 60 plus years as a reasonable person." (#290 at 22.)

[25] Plaintiff insists that Ivey's deposition shows that he unquestionably intended to include an expiration date in the license key. (#290 at 18-20, 22-23.) Despite his assertions that "Turner is competent to testify as to Mr. Ivey's intentions as they appear from the record..." (#290 at 20) and that "Turner is entitled to establish as fact, that Hubbard did so knowing or wilfully" (#290 at 22-23), the Court finds that the parties dispute this fact and that Plaintiff has not established it based on personal knowledge.

pursuant to Mass. Gen. L. c. 93A, § 2. (#288 at ¶¶ 30-33.) Defendant rightfully objects to all these as legal conclusions. (##274, 286 at ¶¶ 21-24; #293 at ¶¶ 30-33.)

Several of Plaintiff's declarations also lack adequate support. Plaintiff describes the license key as "an electronic file containing data that Hubbard creates and that Collection Partner reads to determine what licensing permissions the Collection Partner user has," and asserts that the license key is "proprietary in that only Hubbard has the means of creating a license key for Collection Partner." (#269 at ¶¶ 9-10.) He cites no authority for these contentions. In addition, Plaintiff includes several assertions that cite to his own affidavits, but includes no explanation of how they could come from his personal knowledge. All of these are addressed above, as challenges to Defendant's facts.

Plaintiff repeatedly argues that Defendant has failed to counteract his conclusions of law or unsupported allegations with countervailing facts. (*See generally* #290 at 17-23.) However, when the nonmoving party bears the burden of proof on an issue, the moving party may simply point out that there is an absence of evidence in support of that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where Plaintiff's "facts" are unsupported by admissible evidence, Defendant does not have any duty to raise alternate facts that would prove Plaintiff's assertions wrong. Defendant may properly point out a lack of evidence, as it has done here.

IV.   <u>CASE HISTORY</u>

This case has a tortured procedural history. Plaintiff filed his complaint on August 1, 2012, alleging Massachusetts common law conversion and violation of 18 U.S.C. § 1030 (count I), negligent infliction of emotional distress (count II), and violation of Mass. Gen. L. c. 93A §§

2, 11 (count III), and demanding $250,000.00 in damages.[26] (#1.) Defendant answered on

September 14, 2012. (#6.) The parties attempted mediation early in the case, but did not reach

settlement. (#34.) After multiple discovery motions and extensions, Defendant filed a motion for

summary judgment on October 17, 2014. (##63, 64, 65, 66; un-redacted versions at ##67, 68, 69,

70.) Plaintiff responded with a motion to strike on October 24, 2014, on grounds that Defendant

had failed to confer before filing the motion, that it had improperly included confidential

information from mediation, and that discovery was incomplete. (##71, 72, 73.) Defendant

opposed on November 3, 2014. (##85, 86.) The motion to strike was denied on November 18,

2014. (#98.)

　　　More discovery motions ensued, and Plaintiff filed a motion to amend his complaint on

November 15, 2014. (##94, 95, 96, 97.) Defendant opposed amending on November 26, 2014.

(##101, 102.) On December 17, 2014, the undersigned held a hearing on various motions,

including Plaintiff's motion to amend, and issued orders. (##107, 108, 111.) Plaintiff's motion to

amend was denied in large part, although Plaintiff was allowed to supplement his complaint with

a copy of the Collection Partner agreement. (#109.) On December 29, 2014, Plaintiff filed a

motion for reconsideration of the denial of his motion to amend. (##114, 115, 116, 117.) The

next day, Defendant opposed (##118, 119), and Plaintiff sought leave to file a reply. (#120.)

Plaintiff also appealed the denial to the District Court. (#121.) On January 3, 2015, Defendant

filed a motion to strike Plaintiff's request for leave to reply. (##122, 123.) On January 5, 2015,

Plaintiff opposed the motion to strike. (##124, 125, 126, 127.) The undersigned granted Plaintiff

the right to reply, and denied Defendant's motion to strike. (##128, 129.) Plaintiff filed his reply

---

[26] Plaintiff listed $250,000 as his demand on the civil cover sheet, yet the damages enumerated in his complaint total $423,500. From his subsequent arguments, it appears that Plaintiff is actually claiming $423,500.

along with a motion for clarification. (##130, 131, 132.) After additional voluminous discovery motions, on March 9, 2015 Plaintiff filed a second motion for reconsideration of the denial of his motion to amend the complaint (##176, 177, 178), and Defendant opposed on March 20, 2015. (##193, 194.) On March 22, 2015, Plaintiff sought leave to reply (#195, 196), and Defendant opposed on March 25, 2015. (##197, 198, 199.) More discovery motions ensued, and Plaintiff filed his reply, with leave of court, on March 27, 2015. (##216, 217, 218.) On April 23, 2015, the undersigned issued a Report and Recommendation that Plaintiff's second motion for reconsideration regarding amending the complaint be denied in part, and allowing him to plead special damages. (#221.) Plaintiff appealed this decision to the District Court. (#224, 228.) Judge O'Toole adopted the Report and Recommendation, and denied Plaintiff's appeal, on June 15, 2015. (#230, 231.) Plaintiff then sought to strike Defendant's answer to the complaint (#232, 233); this motion was denied on June 23, 2015. (#235.) Pursuant to the undersigned's report and recommendation (#239), the District Court denied Defendant's October 2014 motion for summary judgment without prejudice on July 22, 2015, based on Defendant's intent to file a new motion for summary judgment. (#240.) The instant cross-motions for summary judgment followed, as described above.

V.    LEGAL ARGUMENT

A. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Federal Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (internal quotation marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial

burden of asserting the absence of a genuine issue of material fact and "support[ing] that

assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-*

*Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). A genuine issue of fact exists

where a factfinder could find in favor of the non-moving party, "while material facts are those

whose existence or nonexistence has the potential to change the outcome of the suit." *Green*

*Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (internal quotation marks and

citation omitted). "Once the moving party avers the absence of genuine issues of material fact,

the non-movant must show that a factual dispute does exist, but summary judgment cannot be

defeated by relying on improbable inferences, conclusory allegations, or rank speculation."

*Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation

marks and citation omitted).

     In determining whether summary judgment is proper, a court considers the evidence "in

the light most favorable to the non-moving party" and draws "all reasonable inferences" in its

favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). Rule 56 "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"'Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)

(further internal quotation marks omitted)).

     "Cross-motions for summary judgment do not alter the basic summary judgment

standard, but rather require courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *ADA Sols., Inc. v. Meadors*, 98 F. Supp. 3d 240, 252 (D. Mass. 2015) (citing *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103 (1st Cir.2001), and *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996)). The court must "consider each motion separately, drawing inferences against each movant in turn." *LaPlante v. Massachusetts Dep't of Correction*, 89 F. Supp. 3d 235, 241 (D. Mass. 2015) (citing *Blackie v. State of Maine*, 75 F.3d 716, 721 (1st Cir.1996) and quoting *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 n.8 (1st Cir.1995)) (internal quotation marks omitted)).

### B. Admissibility of Facts

The universe of facts to be considered on summary judgment is limited by the Federal Rules of Civil Procedure:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact... An affidavit or declaration used to support or oppose a motion *must be made on personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (emphasis added). Notably, the list of acceptable source documents may not be supplanted by "the mere pleadings themselves." *Celotex*, 477 U.S. at 324.

The Rule does not require the court to accept the parties' conclusions of law. Unlike factual allegations, "[m]ere legal conclusions 'are not entitled to the assumption of truth.'" *Hermida v. Archstone*, 826 F. Supp. 2d 380, 383 (D. Mass. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)) (additional citations omitted), *and see Schubert v. Nissan Motor Corp. in*

13

*U.S.A*, 148 F.3d 25, 30-31 (1st Cir. 1998) (court properly excluded medical expert's opinion of causation as an unfounded legal conclusion). Plaintiff cannot overcome this hurdle by dressing his arguments and conclusory statements in the clothing of an affidavit. "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit." *Ahmed v. Berkshire Med. Ctr., Inc.,* 201 F.3d 426 (1st Cir. 1999). Additionally, "mingling... alleged facts, comment, inference, argument and explanation" in an affidavit is an "inherently unsound practice." *Universal Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5 (S.D.N.Y. 1965).

The Court has wide latitude in dealing with unsupported facts. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56 (e). The Local Rules further refine this last point, stating that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Local Rule 56.1. Therefore, the Court has discretion to discount facts that do not meet the requirements of the rules.

Additionally, neither party has properly authenticated its documents as required by the rules. "To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (internal citations omitted), *and see* Fed. R. Civ. P. 56(e). All

exhibits must be "sworn or certified copies." *Id.* Neither party has complied with this requirement. The Court will consider these documents, and any challenge to their authenticity is deemed waived. *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991) (internal citation omitted).

### C. Defendant's Motion for Summary Judgment

#### 1. Count I-A (Violation of 18 U.S.C. § 1030 *et seq.*)[27]

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, has multiple provisions, and the complaint does not specify which one(s) Defendant has allegedly violated. (#1.) Plaintiff's memorandum (#265 at 19) states that it was 18 U.S.C. § 1030(a)(5)(A), "Whoever... knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer... shall be punished as provided..." All specified penalties are criminal. Title 18 U.S.C. § 1030(c).

As a threshold matter, a plaintiff may maintain a civil action under the CFAA only when the conduct involves one of five enumerated factors: "(I) loss to 1 or more persons during any 1-year period... aggregating at least $5,000 in value; (II) the [potential or actual] modification or impairment... of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; [or] (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security."[28] Title 18 U.S.C. §

---

[27] Plaintiff combined two causes of action, violation of 18 U.S.C. § 1030 and a claim for conversion under Massachusetts law, within one count. The federal claim is analyzed separately here.

[28] When one of these five factors is met, "Section 1030(g) affords a civil action for any CFAA violation." *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004).

1030(c)(4)(A)(i), 1030(g). Additionally, "[d]amages for a violation involving only [factor (I)] are limited to economic damages." Title 18 U.S.C. § 1030(g). Because the facts of this case do not meet factors (II) through (V), Plaintiff must therefore show an aggregate loss of at least $5,000 within one year, and he may recover only economic damages.

The CFAA distinguishes "damage" from "loss," defining the latter as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Title 18 U.S.C.A. § 1030 (e)(11). There is a split of authority on damages under the CFAA. Some federal courts have read the last phrase, "because of interruption of service," to limit the entire definition of "loss." *Jarosch v. Am. Family Mut. Ins. Co.*, 837 F. Supp. 2d 980, 1022-23 (E.D. Wis. 2011); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 641 (S.D.N.Y. 2011), *on reconsideration*, No. 08-9628, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011); *Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1370-71 (S.D. Fla. 2009) *order clarified*, No. 09-60202, 2009 WL 3644475 (S.D. Fla. Oct. 30, 2009). Other courts take a more expansive reading, including investigative and other costs under "any reasonable cost to any victim." *See, e.g., Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894-95 (N.D. Cal. 2010), *and Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 2264457 (W.D. La. Aug. 6, 2007). Even under the broadest possible reading, however, no court has held that damages under the CFAA can be as far-ranging as those that Plaintiff claims. Here, Plaintiff has failed to present any evidence that could possibly raise a genuine issue of material fact on his alleged loss of the threshold amount of $5,000.

There is inadequate evidence to raise a genuine issue on damages under the CFAA.

Plaintiff has pled sweeping damages of $20,000 for the value of the Collection Partner software; $100,000 for the WordPerfect macros and merges he developed; reimbursement for payments of $3,500 he made to Hubbard; his gross annual income of $150,000; and negligently inflicted emotional distress of $150,000. (#1 at 8-9.) At this stage, Plaintiff carries the burden of raising a genuine issue of material fact on whether he actually suffered damages of these amounts.

Plaintiff did not permanently lose access to Collection Partner, the data he accesses through it, or his WordPerfect macros and merges; he has been able to use them continuously since receiving the new license key on June 1, 2011. (##244, 251 at ¶ 17; no response from Plaintiff.) Although Plaintiff claims that the expiration date in that license key "would have" made Collection Partner inaccessible again on August 1, 2011 (#269 at ¶ 19a), there is no evidence that Collection Partner was actually inaccessible to him at any point after June 1, 2011. Plaintiff admits that he received a permanent license key in January 2012. (#288 at ¶¶ 26-28.) Even assuming *arguendo* that he could recover the entire value of the software and the WordPerfect macros and merges, he has not presented any evidence suggesting that Collection Partner, a software package over 23 years old, could be valued objectively at $20,000.[29] Although he estimates the value of his time in creating the WordPerfect macros and merges at $100,000, he has not shown any factual support for the idea that this is the proper valuation.[30] He

---

[29] Plaintiff bases that figure on a provision of his 1992 contract with Defendant. (#243, exh. 8, at 9-10; ##244, 251 at ¶ 7). However, he has not presented any evidence to show that that document – a 23-year-old contract between private parties – could provide a meaningful estimate of the market value of a software package in 2011. Defendant has asserted that the standard purchase price of the software package utilized by Plaintiff was approximately $2,500 in 2011. (#243, exh. 4, at 11.)

[30] Plaintiff's rationale, as explained in his answer to Defendant's interrogatory no. 14, is based on speculation about how much a custom programmer might charge to do 2000 hours of work. He has not provided any concrete information about replacement value, such as a price quote from a computer programmer showing an actual billing rate or time estimate to recreate the macros and merges.

has not challenged under any viable legal theory the validity of the contractual provisions under which he made the $3,500 payment to Hubbard. There is absolutely no evidence that Plaintiff's actual lost income comes close to the $150,000 figure. Finally, damages for negligently inflicted emotional distress are far outside the CFAA's scope. *See, e.g., Creative Computing v. Getloaded.com, LLC*, 386 F.3d 930, 935 (9th Cir. 2004) (statutory limitation of economic damages "precludes damages for death, personal injury, mental distress, and the like"); *Mortensen v. Bresnan Commc'n, L.L.C.*, No. 10-13, 2010 WL 5140454, at *7 (D. Mont. Dec. 13, 2010) (emotional distress not actionable under the CFAA); *Garland-Sash v. Lewis*, No. 05-6827, 2011 WL 6188712, at *4 (S.D.N.Y. Dec. 6, 2011) (finding that "loss" under the CFAA must be "actually related to computers," and that emotional distress claims are too "remote"); *and Frees*, 2007 WL 2264457 at *5 (CFAA damages exclude "pain and suffering, emotional distress, and other like damages").

By his own admission, Plaintiff's only losses from the conduct that violated the CFAA (that is, the conduct that disabled access to his data and software for the five-hour period on June 1, 2011) were 1) that he had to pay his employees and 2) that he could not use his office to get work done during the time that Collection Partner was down. (##244, 251 at ¶ 18; no response from Plaintiff.) Defendant conducted Plaintiff's deposition on July 10, 2013. At the deposition, Plaintiff testified as follows:

> Q: What damages have you sustained from the loss of use of Collection Partner? And I'm using that word "loss of use." I understand that you say that you can't quantify that. But is it fair to say that Collection Partner was down for a matter of hours on June 1st, 2011?
>
> A: It was down for the better part of the day.
>
> Q: Okay. And what damages have you sustained as a result of that?
>
> A: What do you mean by "damages"?

18

Q: You've identified a number of categories of damages in your answers to interrogatories.

A: Uh-hmm.

Q: Can you tell me how it is you were damaged in any respect because of the – your inability to access Collection Partner on June 1st, 2011?

A: I'm not sure I quite understand your question because the question says were I damaged. *If you're asking for actual pecuniary losses, that is not my argument in this case.*

Q: Okay. Did you – let me ask you, did you suffer any actual pecuniary losses on June 1st, 2011, because of your inability to use Collection Partner?

A: Yes, I did. I had to pay my two people.

(#243, exhibit 2, at 180-181 (emphasis added).) Plaintiff went on to explain that he had to pay each employee for eight hours of work, at a total cost of far less than $5,000. (*Id.* at 181-182.) These are the only losses that can reasonably be inferred from the facts of this case.

Plaintiff argues that Defendant has somehow waived mitigation and mistake and therefore has no hope of reducing any of the alleged damages. This theory misconstrues the measure of damages under his state law claims, and is inapplicable to the CFAA. Even under Massachusetts law, Plaintiff still must show that he suffered some actual loss; it is well established that "liability does not extend to speculative damages" unsupported by proof. *Nashua Brookside Hosp., Inc. v. Cappuccio*, No. CIV. A. 91-12158-Z, 1993 WL 62366, at *4 (D. Mass. Feb. 16, 1993) (citing *Burnham v. Dowd*, 104 N.E. 841, 845 (Mass. 1914)). Regardless of whether Plaintiff could prevail on damages under state law on his other claims, there is no theory under which those damages could satisfy the floor set by the CFAA for the "loss" specified by that statute.

Because the amount of "loss" here does not meet the statutory minimum, Plaintiff's CFAA claim is doomed, and the Court's analysis ends here.

2.  Pendent Jurisdiction over State Law Claims: Count I-B (Conversion), Count II (Negligent Infliction of Emotional Distress), and Count III: Violation of Mass. Gen. L. c. 93A §§ 2, 11

With the sole federal claim dismissed, the Court faces the discretionary decision whether to exercise pendent jurisdiction over the remaining three state law claims. Title 28 U.S.C. § 1367 ("[D]istrict courts may decline to exercise supplemental jurisdiction over a [pendent claim] if… the district court has dismissed all claims over which it has original jurisdiction…"); *Philibotte v. Nisource Corp. Servs. Co.*, 793 F.3d 159, 167 n.7 (1st Cir. 2015) (when a federal court "dismisses the foundational federal claims, it must reassess its jurisdiction") (citations omitted). The exercise of pendent jurisdiction is rooted in "considerations of judicial economy, convenience and fairness to litigants," and "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (citing *Gibbs*, 383 U.S. at 726, and *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995)).

Here, it would not be in the interests of judicial economy or convenience for this Court to retain jurisdiction over the remaining counts, despite their common nucleus of fact with the CFAA count. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors… will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 364 n.7 (1988); *see also Gibbs*, 383 U.S. at 726 (federal courts should avoid unnecessarily deciding issues of state law "both as a matter of comity and to promote justice between the parties…"), *and Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1043 (5th Cir. 1982) ("Where the main federal action has been settled prior to trial, considerations of judicial efficiency and economy can no longer justify the continued exercise of federal jurisdiction over ancillary state-law claims"). State law claims are

20

the sole remaining substance of Plaintiff's case against Defendant; the federal court should therefore defer to Massachusetts state courts as the primary authority on state law.

The remaining factor – fairness – requires close scrutiny of the circumstances to ensure that the parties will not be prejudiced if this Court dismisses the remaining claims. Plaintiff's claims stem from the events of June 1, 2011, and the applicable statutes of limitations have run. Mass. Gen. L. c. 260, § 2A (three-year statute of limitations for tort actions); Mass. Gen. L. c. 260, § 5A (four years for consumer protection actions). However, Plaintiff would still be able to file a complaint in state court, if he so desires. Under Massachusetts law, a plaintiff "may commence a new action for the same cause within one year" of dismissal of an action that fails "for any matter of form." Mass. Gen. L. c. 260, § 32 (the "renewal statute"). An action is dismissed for form, as opposed to substance, where it has not been decided on the merits and where the defendant was on notice of the action within the limitations period. *Liberace v. Conway*, 31 Mass. App. Ct. 40, 44-45 (1991), *review denied*, 411 Mass. 1102 (1991); *but see Chao v. Balista*, 645 F. Supp. 2d 51, 55 (D. Mass. 2009) (no requirement of actual notice to defendants, so long as the original suit was timely filed). In *Liberace*, the court expressly determined that the renewal statute applies to pendent state claims dismissed from federal court, and such a dismissal is "for… form." 31 Mass. App. Ct. at 45. Here, Defendant, as an active participant in the federal litigation, had notice of the proceedings within the statutory period. (*See, e.g.,* #4 (summons), #5 (notice of appearance of Defendant's counsel), *and* #6 (answer).) The dismissal would also be procedural and not substantive. The undersigned expressly declines to determine the merits of the state law claims, with the intent of reserving them for the state court should Plaintiff decide to pursue them there.

The parties have already conducted discovery and early stages of litigation, and rather than going to waste, these efforts would advance a state court action. *Compare United States v. Gooch*, No. CIV.A. 85-2812-MA, 1986 WL 13079, at *2 (D. Mass. Nov. 7, 1986) (parties were not prejudiced by denial of pendent jurisdiction after summary judgment motions, where discovery could be used in state court proceedings and claims were not time-barred), *with Redondo Construction Corp. v. Izquierdo*, 662 F.3d 42, 47-50 (1st Cir. 2011) (only four days before the scheduled trial date, federal district court granted summary judgment on the sole federal claim and sought to avoid deciding local law claims). In *Redondo*, the plaintiff would have had to translate substantial English-language discovery and trial preparation into Spanish for the Puerto Rico court, making the court's refusal "wasteful and enormously harmful." *Id.* No such considerations exist here. No trial date has been set, and all of the parties' preliminary litigation efforts to date would be immediately relevant and useful in a state court proceeding. Since there is no harm to either party in ending the federal court's involvement at this stage, the interests of judicial economy, convenience, fairness, and comity all support declining the continued exercise of pendent jurisdiction over the remaining three counts.

D. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff did not assert any affirmative arguments in his cross-motion for summary judgment, instead referring the Court to his opposition to Defendant's motion for summary judgment and other documents filed. (##267, 268, 269, 270.) Therefore, the analysis above also addresses Plaintiff's cross-motion.

VI.   CONCLUSION

For the reasons above, the Court RECOMMENDS GRANTING Defendant's motion for summary judgment (#242) on Count I-A (CFAA) and DISMISSING the other three counts

22

(conversion, negligent infliction of emotional distress, and violation of Mass. Gen. L. c. 93A), without prejudice to Plaintiff bringing an action for those three counts in Massachusetts state court, and DENYING in full Plaintiff's cross-motion for summary judgment (#267).[31]

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

December 21, 2015.

---

[31] The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).